UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CHAMBERS OF**<br>**MADELINE COX ARLEO**<br>**UNITED STATES DISTRICT JUDGE** | **MARTIN LUTHER KING COURTHOUSE**<br>**50 WALNUT ST. ROOM 4066**<br>**NEWARK, NJ 07101**<br>**973-297-4903** |

December 30, 2020

VIA ECF

**LETTER ORDER**

Re:  **Daniel Silva, et al. v. Evonik Corporation, et al.**
     **Civil Action No. 20-2202**

Dear Litigants:

Before the Court is Defendants Evonik Corporation's ("Evonik"), President of Evonik Corporation's (the "President"), Board of Directors of Evonik Corporation's (the "Board") and Evonik Investment Committee's (the "Investment Committee" and together with Evonik, the Board, and the President, "Defendants") Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 15. Plaintiffs Daniel Silva and Rhonda Allen ("Plaintiffs") oppose the Motion. ECF No. 17. For the reasons explained below, the Motion is **GRANTED in part** and **DENIED in part**.

**I.  BACKGROUND**[1]

This putative ERISA class action arises out of Defendants' selection and maintenance of investment options offered by the Evonik Corporation 401(k) Savings Plan, a defined contribution plan[2] available to full-time employees of Evonik. See generally Compl; see also Declaration of Carla D. Macaluso ("Macaluso Decl.") Ex. 1 (the "Plan"), ECF No. 15.3.[3]

Participants in the Plan may direct their contributions into any of fifteen investment options selected at the discretion of the Investment Committee, whose members are appointed by the President. Compl. ¶¶ 21-22, 30, 44. Prudential Retirement (the "Recordkeeper") provides account statements and other administrative services to Plan participants and serves as the Plan's

---

[1] The facts are drawn from the Complaint, ECF No. 1, and documents integral to the Complaint. See Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3rd Cir. 2006).

[2] "[A] 'defined contribution plan' . . . promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions." LaRue v. DeWolff, Boberg & Assocs., Inc., 552 U.S. 248, 250 n.1 (citing 29 U.S.C. § 1002(34)).

[3] As Plaintiff's Complaint arises out of the Plan, it is integral to the Complaint and can be considered on a motion to dismiss. See, e.g., Lees v. Munich Reinsurance Am., Inc., No. 14-2532, 2015 WL 1021299, at *4 n.1 (D.N.J. Mar. 9, 2015) (considering description of plan covered by ERISA in motion to dismiss claim arising out of the plan).

recordkeeper.[4]  Id. ¶ 116.  Prudential Bank and Trust (the "Trustee") holds the Plan's assets in trust.  Id. ¶¶ 5, 25.  Plaintiffs generally allege that Defendants have failed to adequately monitor the Plan to ensure that its investment options and recordkeeping costs were prudent in terms of expense, when compared to similar options with lower costs.[5]  Id. ¶¶ 5-7.

On February 28, 2020, Plaintiffs filed the two-count Complaint alleging violations of the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). Plaintiffs contend that (1) the Investment Committee and Board breached the fiduciary duties of loyalty and prudence imposed by 29 U.S.C. § 1104(a) in their selection and maintenance of investments and recordkeeping services, id. ¶¶ 130-36 ("Count I"); and (2) Evonik, the President, and the Board breached their respective duties to monitor other fiduciaries of the Plan, id. ¶¶ 137-43 ("Count II").  Plaintiffs, former Evonik employees who participated in the Plan during their employment, bring this action on behalf of all participants and beneficiaries of the Plan from February 28, 2014 to present (the "Class Period").  Id. ¶¶ 13, 14, 50.  They seek, among other things, damages and injunctive relief.  Id. at 45-46.

Defendants filed in the instant Motion on May 29, 2020, arguing that (1) Plaintiffs lack standing to seek injunctive relief; and (2) the Complaint fails to state a claim upon which relief can be granted.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

To resolve a Rule 12(b)(1) motion, the Court first determines whether the motion presents a "facial" or "factual" attack.  See Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014).  A factual attack is an argument that "the facts of the case . . . do not support the asserted jurisdiction."  Id. at 358.  In reviewing a factual attack, the Court may "consider and weigh evidence outside the pleading to determine if it has jurisdiction."  Gould Elecs. Inc. v. United States, 220 F.3d 169, 178 (3d Cir. 2000).  Here, the Motion presents a factual attack because it asserts that undisputed evidence outside the Complaint demonstrates that Plaintiffs lack Article III standing to seek injunctive relief.  See Def. Mem. at 29, ECF No. 15.1.

### B.   Rule 12(b)(6)

In resolving a Rule 12(b)(6) motion to dismiss, the Court accepts all pleaded facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation marks and citation omitted).  To survive, the claims must be facially plausible, meaning that the pleaded facts "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).   The allegations must be "more than labels and conclusions,

---

[4] Plaintiff defines "recordkeeping" as a "catchall term" for the administrative services provided to participants of a defined contribution plan.  Compl. ¶ 116.

[5] Plan expenses are paid first from Plan assets, and then by Evonik as a last resort.  Compl. ¶¶ 46-49.

and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

**III.   ANALYSIS**

**A.   Standing to Seek Injunctive Relief**

Defendants first launch a limited attack on Plaintiffs' standing, arguing that as former participants in the Plan, they have no right to seek prospective injunctive relief. The Court agrees.

A plaintiff must separately demonstrate Article III standing for each type of relief sought. Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009). In a class action seeking prospective relief, at least one named plaintiff must demonstrate that he is personally "likely to suffer future injury from the defendant's conduct." McNair v. Synapse Grp. Inc., 672 F.3d 213, 223 (3d Cir. 2012) (citation and quotation marks omitted); see id. at 224-25 (holding that former customers who cancelled magazine subscriptions and had no intention to re-subscribe lacked standing to seek injunction against future consumer fraud violations).

Defendants have presented undisputed evidence that Plaintiffs, former Evonik employees, are no longer invested in any fund offered by the Plan. See Macaluso Decl. Exs. 3-6; see also Pl. Opp. at 5 (arguing that Defendants denied Plaintiffs access to certain documents because they each "requested full distributions from their Plan accounts; therefore both of them are no longer participants in the Plan").[6] Plaintiffs therefore no longer participate in the Plan and cannot reasonably expect to participate in the Plan in the future, meaning there is no likelihood of future injury from Defendants' conduct.

Arguing in favor of standing, Plaintiffs rely on cases holding that ERISA permits a plaintiff suing on behalf of a plan to seek "relief under [ERISA's civil enforcement provision] that sweeps beyond his own injury"—once Article III standing is established. See Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 593 (8th Cir. 2009); Cassell v. Vanderbilt Univ., No. 16-2086, 2018 WL 5264640, at *3 (M.D. Tenn. Oct. 23, 2018).[7] But ERISA may not be used to establish constitutional standing in the first instance. See generally Thole v. U.S. Bank N.A., 140 S. Ct. 1615 (2020). Plaintiffs claim for injunctive relief is accordingly dismissed for lack of standing.

**B.   Fiduciary Status**

Defendants next argue that the Complaint fails to allege that the Board acted as a fiduciary with respect to the conduct alleged in the Complaint, including the selection of Plan investments and recordkeeping services (Count I) and the monitoring of other fiduciaries (Count II). The Court agrees as to Count I but concludes that Count II may proceed against the Board.

---

[6] Defendants' evidence is consistent with allegations in the Complaint that Plaintiffs "participated in the Plan" only "during [their] employment." Compl. ¶¶ 13-14. Still, as the Complaint does not specifically allege that Plaintiffs have divested from the Plan, the Court construes Defendants' argument as a factual attack on jurisdiction and properly considers the unrefuted evidence outside the Complaint. See Gould, 220 F.3d at 178.

[7] This becomes relevant, for example, where a plaintiff invested in some, but not all, of a defined contribution plan's allegedly imprudent investments. See, e.g., Cassell, 2018 WL 5264640, at *3. In such case, the plaintiff has Article III standing based on his own investments, and ERISA permits him to challenge other investments on behalf of the plan. Id. Defendants here do not dispute any aspect of Plaintiffs' standing to seek backwards-looking relief stemming from the alleged mismanagement of the Plan.

To state a claim for breach of fiduciary duty under ERISA, Plaintiff must allege that "(1) a plan fiduciary (2) breache[d] an ERISA-imposed duty (3) causing a loss to the plan." Sweda v. Univ. of Pa., 923 F.3d 320, 327-28 (3d Cir. 2019) (quoting Leckey v. Stefano, 501 F.3d 212, 225-26 (3d Cir. 2007)).

An entity is a fiduciary to the extent it "maintain[s] any authority or control over the management of the plan's assets, management of the plan in general, or maintain[s] any responsibility over the administration of the plan." Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994); see also 29 U.S.C. § 1002(21)(A). Further, an entity may "qualify as a fiduciary with respect to certain actions, but not with respect to others." Pietrangelo v. NUI Corp., No. 04-3223, 2005 WL 1703200, at *5 (D.N.J. July 20, 2005) (citation omitted). The Court must therefore ask "whether [the entity] is a fiduciary with respect to the particular activity in question." Renfro v. Unisys Corp., 671 F.3d 314, 321-22 (3d Cir. 2011) (citing Srein v. Frankford Trust Co., 323 F.3d 214, 221 (3d Cir. 2003)). As this requires a "fact sensitive inquiry," a determination of fiduciary status is often premature on a motion to dismiss. In re Schering-Plough Corp. ERISA Litig., No. 03-1204, 2007 WL 2374989, at *7 (D.N.J. Aug. 15, 2007).

Count I alleges that the Board had the fiduciary duty to manage the assets of the Plan in a prudent manner and for the sole and exclusive benefit of Plan participants. Compl. ¶ 132. The Complaint, however, does not allege that the Board had any direct role in selecting investments or recordkeeping services for the Plan. See Compl. ¶ 30 (alleging that the Investment Committee was responsible for selecting investments); Plan § 12.10 (granting Investment Committee the authority to contract for recordkeeping services). Count I is therefore dismissed as to the Board and may proceed only against the Investment Committee.

Count II asserts that the Board had the duty to monitor other fiduciaries, a duty which ERISA imposes on those with the authority to appoint and remove plan fiduciaries. Graden v. Conexant Sys., Inc., 574 F. Supp. 2d 456, 466 (D.N.J. 2008) (collecting cases). Plaintiff identifies two potential sources for such duty. First, Plaintiff alleges that the Board acted as a Plan fiduciary because it had the authority to appoint and monitor the Trustee. Compl. ¶¶ 25-27. However, the conduct challenged in the Complaint does not relate to this authority. For example, Plaintiffs have not challenged the fees charged by the Trustee or any aspect of the Trustee's conduct. See id. ¶ 26 ("[T]he Trustee had 'exclusive authority and discretion to manage and control the Trust Fund, except to the extent that the Investment Committee exercises its authority to direct investment of all or a portion of those assets.'") (citing Plan § 12.15) (emphasis added).[8] Consequently, any fiduciary duty the Board may have with respect to the Trustee falls outside the scope of this litigation.

Second, though the Board does not have the authority to appoint or remove members of the Investment Committee, the Complaint alleges that the Board performed "some of [Evonik's] Plan-related fiduciary functions, including monitoring the activities of the [Investment]

---

[8] The Plan also authorizes the Trustee to "designate agents or others to carry out certain of the administrative responsibilities in connection with management of the Trust Fund." Plan § 12.15. Plaintiff does not allege that this provision authorizes the Trustee to select the recordkeeping services available to Plan participants, which appears to be the province of the Investment Committee. Id. § 12.10.

4

Committee along with the President."⁹  Compl. ¶ 24; see also Charles v. UPS Nat'l Long Term Disability Plan, 145 F. Supp. 3d 382, 397 (E.D. Pa. 2015) (holding that a "fiduciary may delegate its fiduciary responsibilities to non-fiduciaries, thereby making persons not named as fiduciaries subject to liability under ERISA") (citing Marx v. Meridian Bancorp, Inc., F. App'x 645, 650 (3d Cir. 2002)).  Plaintiff also alleges that the Investment Committee was required to "submit such . . . reports as the Board of Directors shall request," suggesting that the Board was assigned at least some discretion in overseeing the Investment Committee's general activities.  Compl. ¶ 24 (citing Plan § 12.12).  While further factual development is needed to ascertain the precise scope of the Board's role, these allegations adequately plead the Board's fiduciary status with respect to the monitoring of the Investment Committee.  Dismissal of Count II against the Board would be premature.

### C. Duty of Prudence

Defendants further contend that Plaintiffs have failed to plausibly allege that the Investment Committee has breached the duty of prudence imposed by ERISA.  The Court disagrees.

ERISA imposes "a fiduciary standard that is considered 'the highest known to the law.'" Sweda, 923 F.3d at 333 (citation omitted).¹⁰  Among other things, a fiduciary has the duty to "monitor investments and remove imprudent ones" and "understand and monitor plan expenses." Id. at 328 (citing Tibble v. Edison Int'l, 135 S.Ct. 1823, 1826, 1828-29 (2015) ("Tibble III")). With respect to expenses, "fiduciaries [m]ust also consider a plan's 'power to obtain favorable investment products.'"  Id. at 329 (quoting Tibble v. Edison Int'l, 843 F.3d 1187, 1198 (9th Cir. 2016) ("Tibble IV")) (alterations omitted).

The Court must ultimately assess whether the Investment Committee breached its duty of prudence by looking to its "process rather than results" and inquiring whether it "employed the appropriate methods to investigate and determine the merits of a particular investment." Id. (citing In re Unisys Sav. Plan Litig., 74 F.3d 420, 434 (3d Cir. 1996)).  To survive a motion to dismiss, however, Plaintiffs need not "directly allege how [Defendants] mismanaged the Plan," so long as there is "substantial circumstantial evidence" to permit the Court to "reasonably infer that a breach had occurred."  Id. at 332 (citation and quotation marks omitted).  At the same time, "nothing in ERISA requires every fiduciary to scour the market to find and offer the cheapest possible fund." Hay v. Gucci Am., Inc., No. 17-7148, 2018 WL 4815558, at *7 (D.N.J. Oct. 3, 2018) (citing Hecker v. Deere & Co., 556 F.3d 575, 586 (7th Cir. 2009)).  A plaintiff relying on circumstantial evidence must therefore "'provide a sound basis for comparison—a meaningful benchmark'—to show a prudent fiduciary in like circumstances would have selected a different fund."  Pinnell v. Teva Pharm. USA, Inc., No. 19-5738, 2020 WL 1531870, at *4 (E.D. Pa. Mar. 31, 2020) (quoting Meiners v. Wells Fargo & Co., 898 F.3d 820, 822 (8th Cir. 2018)).

Moreover, the Court may not parse the Complaint "piece by piece to determine whether each allegation, in isolation, is plausible."  Sweda, 923 F.3d at 331 (citing Braden, 588 F.3d at

---

⁹ Defendants do not dispute that the Complaint adequately alleges that Evonik, the President, and the Committee are fiduciaries for purposes of the conduct alleged in Count II.  See Compl. ¶¶ 17-23, 30-32.

¹⁰ Section 404(a)(1)(B) of ERISA requires a plan fiduciary to discharge its duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  29 U.S.C. § 1104(a)(1)(B).

598). Instead, the Court employs a "holistic approach" by considering all well-pleaded, non-conclusory allegations, including the "range of investment options," "reasonableness of fees," "selection and retention of investment options," and "practices of similarly situated fiduciaries." Id. (citing Renfro, 671 F.3d at 327). The Court must also remain mindful that "[m]any allegations concerning fiduciary conduct . . . are inherently factual question[s]." Id. at 329 (citation and quotation marks omitted).

With these principles in mind, the Court turns to the specific allegations in the Complaint.

### 1. Failure to Investigate or Select Investments with Lower Expenses

Plaintiffs principally contend that the Plan's investment options have stayed relatively unchanged since 2013, despite the availability of alternative investments with lower expenses. Compl. ¶ 99-100. Applying Sweda's pleading standards, the Eastern District of Pennsylvania recently held in Pinnell v. Teva Pharmacy that a complaint plausibly alleged an imprudence claim through allegations that a plan "maintained expensive investments despite the availability of identical but lower-cost alternatives" accompanied by specific comparisons between the plan's investments and the alternatives. 2020 WL 1531870, at *5; see also Sweda, 923 F.3d 332 & n.7 (reversing dismissal of complaint that offered "specific comparisons between returns on Plan investment options and readily available alternatives" and "directly compared fees on options included in the Plan with readily available lower-cost options").

Viewed holistically, the Complaint's allegations likewise provide circumstantial evidence and "meaningful benchmarks" sufficient to withstand the instant Motion. See Pinnell, 2020 WL 1531870, at *4 (citing Meiners, 898 F.3d at 822).[11] Plaintiffs allege that (1) the Plan offered mutual funds in a higher cost share class, despite the availability of lower cost share mutual funds that were identical in every way except for their lower cost, id. ¶¶ 103-08; (2) Defendant's failed to investigate the availability of collective trusts or separate accounts, which are "materially similar but cheaper alternatives" to the mutual funds in the Plan, id. ¶¶ 109-13; and (3) the Plan maintained three actively managed funds, despite the comparable returns and lower costs offered by passively managed funds, id. ¶¶ 114-15. Citing news articles, academic scholarship and specific examples of cheaper investment alternatives, Plaintiffs contend that a prudent fiduciary would have fully investigated each of the above options and selected investments with cheaper costs. See, e.g., Compl. ¶¶ 82-87, 90-94. More generally, Plaintiffs allege that most of the investment options in the Plan charged higher-than-average fees, with reference to median fees published by the Investment Company Institute and the fees of alleged comparators. Id. ¶¶ 100-02, 112-13.

Defendants' arguments to the contrary are unavailing. First, Defendants argue that Plaintiffs do not adequately allege why their proposed alternatives are comparable. But an inquiry into "whether the alternative funds Plaintiff[s] suggest[ ] are apt comparisons" is a question of fact unsuitable for resolution on a motion to dismiss. Nicolas v. Trustees of Princeton Univ., No. 17-3695, 2017 WL 4455897, at *5 (D.N.J. Sept. 25, 2017). The Court is satisfied that Plaintiffs have sufficiently alleged comparators at this time.

---

[11] Defendants conspicuously fail to distinguish Pinnell from the facts of the instant case, merely arguing that it is a non-binding District Court opinion. See Defs. Reply at 2-4, ECF No. 18. While this is true, Pinnell is nonetheless highly persuasive due to its thoughtful analysis and application of binding Third Circuit precedent to a similar complaint.

Second, Defendants argue that the fees for Plan investments alleged in the Complaint are inflated, as documented by disclosures issued to Plan participants during the Class Period. See Macaluso Decl. Exs. 11-12 (the "Fee Disclosures").[12] Defendants acknowledge that the fees documented in the Fee Disclosures still exceed the comparator and benchmark fees alleged in the Complaint, but they argue that such difference is de minimis and does not plausibly suggest a breach of the duty of prudence.

The Court disagrees because there is no "categorical benchmark" to determine whether fees are excessive. Goldenberg v. Indel, Inc., 741 F. Supp. 2d 618, 636 (D.N.J. 2010). Indeed, even relatively minor cost savings can add up significantly over the length of an investment because participants lose "not only the money spent on higher fees, but also lost investment opportunity; that is, the money that the portion of their investment spent on unnecessary fees would have earned over time." Tibble IV, 843 F.3d at 1198. Rather, the relevant inquiry is whether the Investment Committee prudently investigated cheaper alternative investments, regardless of the degree of savings. Accordingly, any "initial miscalculation based on lack of information" does not defeat Plaintiff's claim. Pinnel, 2020 WL 1531870, at *6.

Finally, Defendants argue that even accepting Plaintiffs' factual assertions as true, the Investment Committee's alleged failure to consider alternative investment options with lower fees does not constitute a breach of duty. Courts outside this Circuit appear divided as to whether certain aspects of the Complaint would be enough to state a claim standing alone, such as the maintenance of actively managed funds[13] or the failure to investigate collective trusts.[14] On the other hand Plaintiffs' cost-share allegations are well-supported by authority demanding that a plan fiduciary specifically consider a plan's bargaining power to obtain "substantially identical" investment products with lower costs.[15] Sweda, 923 F.3d at 328-29 (citing Tibble IV, 843 F.3d at 1198); see also Davis v. Wash. Univ. in St. Louis, 960 F.3d 478, 483 (8th Cir. 2020) (holding that

---

[12] The parties dispute whether Plaintiffs, who are no longer participants in the Plan, had access to the Fee Disclosures when preparing the Complaint. See Def. Mem. at 14; Pl. Opp. at 11. While the Court therefore questions whether the nonpublic Fee Disclosures may be properly considered on a motion to dismiss, it need not address this issue. Even accepting the lower figures cited by Defendant, the Complaint states a claim.

[13] Compare Martin v. CareerBuilder, LLC, No. 19-6463, 2020 WL 3578022, at *4, (N.D. Ill. July 1, 2020) ("[P]laintiffs and courts cannot use ERISA to paternalistically dictate what kinds of investments plan participants make where a range of investment options are on offer."), with Marshall v. Northrop Grumman Corp., No. 16-6794, 2019 WL 4058583, at *10 (C.D. Cal. Aug. 14, 2019) (finding question of material fact as to whether defendants breached fiduciary duty by "fail[ing] to adequately weigh the costs and benefits of an active management strategy against a passive management strategy").

[14] Compare Moitoso v. FMR LLC, 451 F. Supp. 3d 189, 212 (D. Mass. 2020) ("[T]here is no fiduciary duty to investigate alternatives to mutual funds."), with In re M&T Bank Corp. ERISA Litig., No. 16-375, 2018 WL 4334807, at *8-9 (W.D.N.Y. Sept. 11, 2018) (denying motion to dismiss claim that "defendants breached their fiduciary duties by failing to consider collective investment trusts and separate accounts" and holding that any "factual disputes regarding this theory are for another day").

[15] To the extent Defendants argue that Plaintiffs must allege additional facts, such as whether the higher cost share class offered any additional benefits, the Court disagrees. Plaintiffs need not "rule out every possible lawful explanation" for the challenged conduct in the Complaint. Sweda, 923 F.3d at 326 (citing Braden, 588 F.3d at 597). For purposes of this Motion, Plaintiffs have adequately alleged that the lower cost share funds classes "are identical to the mutual funds in the Plan in every way except for their lower cost." Compl. ¶ 103.

a "failure of effort [or] competence" in negotiating lower-cost alternatives "is enough to state a claim for breach of the duty of prudence").

At this early stage in the litigation, and in line with Sweda, the Court declines to parse the Complaint to assess whether each individual allegation plausibly suggests a breach of the Investment Committee's duty to prudently select investments. 923 F.3d at 331. Viewed in its entirety, the Complaint states a claim. See Pinnell, 2020 WL 1531870, at *4.

### 2. Failure to Monitor Recordkeeping Fees

Separately from their claim of imprudent investment, Plaintiffs allege that the Investment Committee breached its duty of prudence by failing to monitor or control the Plan's recordkeeping expenses. Compl. ¶¶ 116-29.

A plan fiduciary's failure to reduce recordkeeping costs through negotiation or the solicitation of competing bids may in some cases breach the duty of prudence. See Sweda, 923 F.3d at 332 (observing that recordkeeping claim may be supported by allegations that a fiduciary failed to determine whether a recordkeeper's pricing was competitive or adequately leverage the Plan's size to reduce fees) (citing Tussey v. ABB, Inc., 746 F.3d 327, 336 (8th Cir. 2014)); Nicolas, 2017 WL 4455897, at *4 (denying motion to dismiss imprudence claim alleging that defendants failed to "conduct a competitive bidding process" or "use significant bargaining power to negotiate lower fees" and "contracted with two recordkeepers, creating an inefficient and costly structure"); Pinnell, 2020 WL 1531870, at *5 (finding allegation that "Defendants failed to monitor or control the Plan's recordkeeping expenses, citing to case law demonstrating per-participant fees for a jumbo plan should peak at less than $50" relevant to imprudence claim).

Like in Pinnel, Plaintiffs' allegations plausibly allege an imprudence claim. The Complaint asserts that despite the general trend of recordkeeping costs decreasing over time, the Plan's costs increased during the Class Period. Id. ¶¶ 124, 127. Plaintiffs further allege that the Plan's recordkeeping costs ranged from $70.39 to $228.66 per participant for each year of the Class Period, while the average cost for smaller plans was significantly lower.[16] Id. ¶¶ 124-25, 127 n.17. They also cite a Department of Labor study indicating that a plan's recordkeeping costs should decrease as the number of participants increase. Id. ¶¶ 126-27. Finally, Plaintiffs maintain that notwithstanding rising recordkeeping costs, the Investment Committee failed to take any steps to negotiate lower costs or solicit competing bids through a Request for Proposal process. Id. ¶¶ 123-24.

Defendants again challenge the veracity of the figures cited by Plaintiffs, contending that the Plan's public Form 5500 demonstrates that the alleged cost of $70.39 to $228.66 per participant refers to the Plan's total administrative expenses, including payments to law firms and other expenses that have no relation to "recordkeeping." See Malacuso Decl. Exs. 14-17, 22.

---

[16] The Complaint relies on data compiled by the 401k Averages Book published by Pension Data Source, Inc. and case law discussing average recordkeeping fees. See e.g., George v. Kraft Foods Glob., Inc., 641 F.3d 786, 798 (7th Cir. 2011) (finding question of material fact as to whether fiduciaries acted prudently in continuing to renew recordkeeper's contract without soliciting competitive bids based in part on expert testimony that the subject plan should have paid "between $20 and $27 per participant per year, rather than the $43 to $65" it paid in recordkeeping services). Defendants concerns as to the accuracy of the benchmark figures cited by Plaintiffs, Defs. Reply at 12 n.14, may be addressed through discovery.

Plaintiffs counter that any error of fact can be attributed to their lack of access to itemized data concerning the Plan's recordkeeping costs, and that the Complaint nonetheless adequately alleges that the Investment Committee failed to respond to increasing recordkeeping fees during the Class Period. Plaintiffs also allege that recordkeeping expenses represent "by far" the largest administrative expense incurred by a plan. Compl. ¶ 118.

Again, the Court concludes that any "initial miscalculation based on lack of information" does not appear to be significant enough to thwart Plaintiffs' claim at the pleading stage, particularly when considered alongside the Complaint's other allegations of imprudence by the Investment Committee.[17] Pinnel, 2020 WL 1531870, at *6. Defendants do not assert an alternative figure for the Plan's recordkeeping costs, and to the extent they can conclusively demonstrate that such fees were prudent in light of prevailing market conditions or otherwise show that the Investment Committee engaged in a prudent process, they may do so on a motion for summary judgment. Sweda, 923 F.3d at 329 (noting that the "reasonableness of compensation for services" is an "inherently factual question[ ]") (citation and quotation marks omitted).

Defendants also argue that Plaintiffs have failed to allege the specific services offered by the Recordkeeper or that the same services were available at a lower price. Plaintiff has, however, alleged that nearly all recordkeepers in the marketplace perform the same core group of services.[18] See Compl. ¶ 116. Further questions concerning the scope of services offered by the Recordkeeper and potential comparators are factual issues that require further development. See, e.g., Kruger v. Novant Health, Inc., 131 F. Supp. 3d 470, 479 (M.D.N.C. 2015) (holding that the "services provided" by a plan's recordkeeper and "how the fees charged to the Plan were excessive in light of those services . . . are the types of facts warranting discovery"); Krueger v. Ameriprise Fin., Inc., No. 11-2781, 2012 WL 5873825, at *20 (D. Minn. Nov. 20, 2012) (same).

Consequently, Plaintiffs have also stated a valid imprudence claim with regards to the Investment Committee's management of recordkeeping fees.

### D. Duty of Loyalty

Count I alleges that in addition to breaching its duty of prudence, the Investment Committee also breached the ERISA-imposed duty of loyalty. Defendants contend that Plaintiffs have failed to allege an independent breach of the duty of loyalty and may not maintain their disloyalty claim based solely on allegations of imprudence. The Court agrees with Defendants.

ERISA requires a plan fiduciary to "discharge his duties . . . for the exclusive purpose of providing benefits to participants and their beneficiaries; and . . . defraying reasonable expenses of administering the plan." 29 U.S.C. § 1104(a)(1)(A). To state a claim for breach of the duty of

---

[17] While not fatal to Plaintiffs' claim, the Court agrees with Defendant that the apparent exaggeration of data in the Complaint is problematic. Plaintiffs acknowledge that they had access to the Form 5500 when preparing the Complaint and that the Form 5500 reports only total "professional fees" without drawing a distinction between recordkeeping and other expenses. Pl. Opp. at 5, 8. Plaintiffs' representation that the range cited in the Complaint represents solely recordkeeping fees therefore evinces, at best, a failure of adequate investigation. Compl. ¶ 124.

[18] Plaintiff specifically alleges that these services include the "provision of account statements," "claims processing, trustee services, participant education, managed account services, participant loan processing, QDRO14 processing, preparation of disclosures, self-directed brokerage accounts, investment consulting, and general consulting services." Compl. ¶ 116.

loyalty, Plaintiffs must plausibly allege that the Investment Committee made decisions for the purpose of benefitting itself or a third party. See Nicolas, 2017 WL 4455897, at *3. Accordingly, a plaintiff may not simply "recast" a claim of imprudence as an independent claim of disloyalty without additional facts suggesting an improper motive or financial benefit. See id.; Allen v. Wells Fargo & Co., 967 F.3d 767, 777 (8th Cir. 2020).

Excluding conclusory allegations, the Complaint asserts only that affiliates of Prudential served as Trustee and Recordkeeper, that Prudential managed a number of investments offered by the Plan, and that Defendants failed to negotiate lower recordkeeping costs. Compl. ¶¶ 5, 44, 116, 124. The Court agrees with Defendants that the mere fact that Prudential managed many of the Plan's investments does not imply disloyalty by the Investment Committee. Cf. Hecker, 556 F.3d 575 at 586 ("[M]any prudent investors limit themselves to funds offered by one company and diversify within the available investment options."). The Court further concludes that Defendants' alleged failure to renegotiate recordkeeping costs—an integral part of Plaintiff's imprudence claim—may not simply be repackaged as a disloyalty claim without additional allegations. See Nicolas, 2017 WL 4455897, at *3.

Count I is therefore dismissed without prejudice to the extent it alleges a breach of the duty of loyalty.

### E. Duty to Monitor Other Fiduciaries

Count II alleges that Evonik, the President, and the Board (the "Monitoring Defendants") breached their duty to monitor the Investment Committee with regards to the conduct alleged in Count I. Defendants maintain that the Complaint does not plausibly state a monitoring claim. The Court disagrees.

Persons with authority to appoint and remove plan fiduciaries have an ERISA-imposed duty to monitor those fiduciaries. Graden, 574 F. Supp. 2d at 466. At minimum, an appointing authority must "at reasonable intervals" review the performance of its appointees "in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards." Id. (citing 29 C.F.R. § 2509.75-8 at FR-17). A monitoring claim must derive from the appointee's independent breach of duty. In re Schering-Plough Erisa Litig., No. 08-1432, 2010 WL 2667414, at *7 (D.N.J. June 29, 2010).

Defendants argue that Plaintiffs have failed to plead any non-conclusory facts describing how the Monitoring Defendants failed to monitor the Investment Committee. But to the contrary, Plaintiffs have alleged that Defendants did not have any system in place for monitoring the Committee's performance. Compl. ¶ 141. This allegation, taken as true, plausibly suggests a breach of the duty to monitor.[19]

---

[19] Some courts have also held that an appointing authority is not subject to liability unless placed on notice of the underlying breach. See, e.g., Scalia v. WPN Corp., 417 F. Supp. 3d 658, 671 (W.D. Pa. 2019). The Complaint does not expressly allege that the Monitoring Defendants knew of the Investment Committee's imprudent conduct, but as the investments selected for the Plan were known and made available to all full-time employees of Evonik, Compl. ¶ 36, "the Complaint could fairly be read to imply that the Monitoring Defendants knew or should have known that those they appointed were breaching their fiduciary duties," In re Honeywell Int'l, No. 03-1214, 2004 WL 3245931, at *15 (D.N.J. Sept. 14, 2004) (quotation marks omitted).

The Court denies Defendants' Motion with respect to Count II.[20]

### IV.   CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss, ECF No. 15 is **GRANTED in part** and **DENIED in part**.  Count I is **DISMISSED** as to the Board of Directors of Evonik Corporation.  Count I is **DISMISSED** as to the Investment Committee to the extent it asserts a breach of the duty of loyalty.  Plaintiffs claim for injunctive relief is **DISMISSED** for lack of standing.  The Motion is otherwise **DENIED**.  To the extent Plaintiffs can cure the deficiencies identified in this order, they may file an amended pleading within thirty (30) days.

                                        **SO ORDERED.**

                                        */s Madeline Cox Arleo*_____
                                        **MADELINE COX ARLEO**
                                        **UNITED STATES DISTRICT JUDGE**

---

[20] Defendants also argue that there is no predicate breach on which to base a failure to monitor claim.  This argument fails in light of the Court's conclusion that the Complaint states a plausible claim for breach of the duty of prudence.