Carla D. Macaluso, Esq. (Bar ID No. 018141996)
JACKSON LEWIS P.C.
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 08922
(908) 795-5200
Attorneys for Defendants

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEHLE HARRIS and DAVID ELLIOT, individually and on behalf of all others similarly situated, | ) ) ) |
| | ) Civil Action No. 2:20-cv-02202 |
| | ) (MCA)(MAH) |
| Plaintiffs, | ) |
| | ) Honorable Madeline Cox Arleo |
| v. | ) United States District Judge |
| | ) |
| EVONIK CORPORATION, PRESIDENT OF EVONIK CORPORATION, BOARD OF DIRECTORS OF EVONIK CORPORATION, EVONIK INVESTMENT COMMITTEE, and JOHN DOES 1-30. | ) Honorable Michael A. Hammer ) United States Magistrate Judge ) ) CLASS ACTION ) |
| Defendants. | ) **ORAL ARGUMENT REQUESTED** ) |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 2

FACTS AND PROCEDURAL BACKGROUND ............................................... 3

LEGAL STANDARDS ...................................................................................... 3

I.    Summary Judgment Standard ................................................................... 3

II.   Standards Governing ERISA Imprudence Claims ................................... 5

ARGUMENT ..................................................................................................... 6

I.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Investment Claims ............... 6

    A.  Plaintiffs Abandoned Their Investment Fee and Share Class Claims ......................... 6

    B.  Plaintiffs' Challenge of the Artisan and Fort Washington Funds Fails. ...................... 9

        1.  Plaintiffs Are Unable to Show Procedural Imprudence ...................................... 8

            a.   ERISA Is Concerned with the Actual Fiduciary Process, Not Formalities, and the IC's Process Is Undisputedly Prudent ........................................... 8

            b.   Benchmark Underperformance, In Hindsight, Does Not Support a Finding of Imprudence ........................................................................... 11

        2.  Plaintiffs Are Unable to Show Objective Imprudence ...................................... 12

        3.  Plaintiffs Are Unable to Show a Loss .............................................................. 14

II.   Defendants Are Entitled to Summary Judgment on Plaintiffs' Recordkeeping Claim ......... 15

    A. Plaintiffs Cannot Prove Procedural Imprudence ...................................................... 15

    B. Plaintiffs Cannot Prove Objective Imprudence ........................................................ 16

    C. Fiduciaries Are Not Required to Reflexively Select the Lowest Fee ......................... 17

    D. Plaintiffs Are Unable to Show a Loss ...................................................................... 18

III.  Monitoring Claim ............................................................................................................ 20

CONCLUSION ....................................................................................................................... 20

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Albert v. Oshkosh Corp.*,
   47 F.4th 570 (7th Cir. 2022) ...................................................................14, 17, 19

*Amato v. Mapei Corp.*,
   No. 3:03cv2130, 2005 U.S. Dist. LEXIS 32290 (M.D. Pa. Dec. 12, 2005) ...........................11

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)...................................................................................4

*Birse v. Centurylink, Inc.*,
   No. 17-cv-02872-CMA-NYW, 2020 U.S. Dist. LEXIS 38149 (D. Colo. Mar.
   5, 2020) ...................................................................................................9

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986)...........................................................................3, 4, 5

*Conway v. A.I. Dupont Hosp. for Child.*,
   Civ. Action No. 04-4862, 2009 U.S. Dist. LEXIS 896 (E.D. Pa. Jan. 6, 2009) ......................4

*Cunningham v. Cornell Univ.*,
   No. 16-cv-6525 (PKC), 2019 U.S. Dist. LEXIS 167868 (S.D.N.Y. Sep. 27,
   2019) ................................................................................................ *passim*

*Doe v. Abington Friends Sch.*,
   480 F.3d 252 (3d Cir. 2007)......................................................................4

*Edgar v. Avaya, Inc.*,
   2006 U.S. Dist. LEXIS 23151 *aff'd* 503 F.3d 340 (3d Cir. 2007) *abrogated on*
   *other grounds by Dudenhoeffer*, 573 U.S. 409 ......................................................20

*Evans v. Akers*,
   534 F.3d 65 (1st Cir. 2008)......................................................................14

*Falberg v. Goldman Sachs Grp., Inc.*,
   2022 U.S. Dist. LEXIS 167064 (S.D.N.Y. Sep. 14, 2022)..................................8-9

*Fifth Third Bancorp v. Dudenhoeffer*,
   573 U.S. 409 (2014)................................................................................15

*Graden v. Conexant Sys. Inc.*,
   496 F.3d 291 (3d Cir. 2007)......................................................................14

*Hughes v. Northwestern Univ.*,
 142 S. Ct. 737 (2022) ....................................................................................6, 7, 12

*J.E. Mamiye & Sons, Inc. v. Fidelity Bank*,
 813 F.2d 610 (3d Cir. 1987)........................................................................................4

*Jenkins v. Yager*,
 444 F.3d 916 (7th Cir. 2006) ..................................................................................11

*Krutchen v. Ricoh USA, Inc.*,
 No. 22-678, 2023 U.S. Dist. LEXIS 68942 (E.D. Pa. Apr. 20, 2023) ....................19

*Luscko v. S. Container Corp.*,
 No. 06-3896 (WHW), 2009 U.S. Dist. LEXIS 119365 (D.N.J. Dec. 23, 2009).......7

*Matney v. Barrick Gold of N. Am.*,
 No. 22-4045, 2023 U.S. App. LEXIS 23627 (10th Cir. Sep. 6, 2023) .......14, 16, 19

*Matousek v. MidAmerican Energy Co.*,
 52 F.4th 274 (8th Cir. 2022) ....................................................................................19

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986)....................................................................................................4

*McCaffree Fin. Corp. v. ADP, Inc.*,
 Civil Action No. 20-5492 (ES) (JRA), 2023 U.S. Dist. LEXIS 56362 (D.N.J.
 Mar. 31, 2023).................................................................................................. *passim*

*Moore v. Comcast Corp.*,
 268 F.R.D. 530 (E.D. Pa. 2010)...............................................................................14

*Muri v. Nat'l Indem. Co.*,
 No. 8:17-cv-178, 2019 U.S. Dist. LEXIS 101540 (D. Neb. June 18, 2019) ............9

*Nunez v. B. Braun Med. Inc.*,
 No. 20-4195, 2023 U.S. Dist. LEXIS 145024 (E.D. Pa. Aug. 18, 2023) ..........17, 18

*Ortiz v. Am. Airlines, Inc.*,
 No. 4:16-cv-151-A, 2020 U.S. Dist. LEXIS 139411 (N.D. Tex. Aug. 5, 2020),
 *rev'd and vacated on other grounds* by 5 F.4th 622 (5th Cir. 2021)......................13

*Pizarro v. Home Depot, Inc.*,
 634 F. Supp. 3d 1260 ...............................................................................................13

*Ramara, Inc. v. Westfield Ins. Co.*,
 814 F.3d 660 (3d Cir. 2016).......................................................................................5

iv

*Renfro v. Unisys Corp.*,
    671 F.3d 314 (3d Cir. 2011)........................................................................................5

*Shiqiong Huang v. TriNet Hr III Inc.*,
    No. 8:20-cv-2293-VMC-TGW, 2023 U.S. Dist. LEXIS 72938 (M.D Fla. Apr.
    25, 2023) ...............................................................................................16, 17, 18, 19

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ..................................................................11, 14, 19

*Sweda v. Univ. of Pa.*,
    923 F.3d 320 (3d Cir. 2019)................................................................................5, 12

*Trs. of the Local 464A UFCW Pension Fund v. Wachovia Bank, N.A.*,
    No. 09-668 (WJM), 2009 U.S. Dist. LEXIS 109567 (D.N.J. Nov. 24, 2009)........................14

*In re Unisys Sav. Plan Litig.*,
    173 F.3d 145 (3d Cir. 1999)............................................................................. *passim*

*In re Unisys Sav. Plan Litig.*,
    74 F.3d 420 (3d Cir. 1996)............................................................................. *passim*

*Vaticano v. Twp. of Edison*,
    Civil Action No. 09-01751 (SDW)(MCA), 2010 U.S. Dist. LEXIS 118157
    (D.N.J. Nov. 5, 2010)...............................................................................................11

*Young Cho v. Prudential Ins. Co. of Am.*,
    Civil Action No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS 185397
    (D.N.J. Sep. 27, 2021)..............................................................................................14

**Statutes**

29 U.S.C § 1104(a)(1)(B) ..................................................................................................5

ERISA .................................................................................................................... *passim*

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ........................................................................3, 4

Local Rule 56.1 ................................................................................................................3

Defendants Evonik Corporation ("Evonik"), the President of Evonik, the Board of Directors of Evonik ("Board"), and the Evonik Investment Committee ("IC" or "Fiduciaries" and collectively, "Defendants") submit this brief in support of Defendants' Motion for Summary Judgment.

## **INTRODUCTION**

Plaintiffs' complaint was speculative and twisted facts.  Unsurprisingly, given that flimsy foundation, discovery has not revealed any evidence to support their claims.  Not even Plaintiffs' expert, Eric Dyson, can adduce a viable theory for liability from the First Amended Class Action Complaint ("FAC"), so he pivots to new investments, never before at issue, and ignores material facts to drum up *something*.  But it is not enough.  There is simply no path to a judgment against Defendants at trial, so the Court should grant summary judgment now.

To prevail on their ERISA imprudence claims, Plaintiffs must show imprudence in the process of monitoring the Plan's investments and fees, that the investments and fees themselves are objectively imprudent, and that the imprudence caused a loss to the Plan.  Plaintiffs cannot satisfy any of these elements for either of their claims.

Plaintiffs' investment challenges have taken on a new form.  Abandoning their investment fee claims, Plaintiffs now focus on the performance of two investments:  the Artisan and Fort Washington funds.  But they overlook the undisputedly prudent process that the IC used to evaluate those funds, focusing instead on the terms of the Plan's Investment Policy Statement ("IPS").  It is undisputed that the IPS's terms are not dispositive to determining whether there was a breach of the standard of care for monitoring investments and, in no event are the IPS's terms a substitute for the facts detailing the analysis that the IC actually undertook.  Moreover, they have offered no evidence that the Artisan and Fort Washington funds are objectively imprudent choices for the

Plan, and the evidence adduced shows the opposite.  And, despite their myopic focus on loss, Plaintiffs lack any evidence on this element whatsoever. The Third Circuit requires Plaintiffs to show loss by comparing returns to prudent alternative investments, *i.e.*, actual funds that the Plan could have selected for the Plan, and Plaintiffs concede that they do not do so.  Instead, they calculate loss by comparing the Artisan and Fort Washington funds' returns to an un-investible index, which does nothing to show loss.

Plaintiffs' recordkeeping claims fare no better.  Again, Plaintiffs ignore all the evidence adduced in discovery showing a prudent process, including that the IC and their investment advisor annually benchmarked fees and also periodically sought bids from other providers, all leading to continual reductions to the fee (a 50% reduction over the Class Period alone).  And again, Plaintiffs cannot show objective imprudence or loss because they failed to enter into evidence any comparisons of the Plan's fees versus the fees of other plans receiving similar services, and Defendants' expert shows that the Plan's fees were reasonable.

Finally, Plaintiffs' claim that the Board and Evonik's President failed to monitor the IC must fall with their imprudence claims as it is derivative thereof.

## **FACTS AND PROCEDURAL BACKGROUND**

Defendants incorporate by reference their Statement of Undisputed Material Facts ("SOF"), filed contemporaneously with this Motion, pursuant to Local Rule 56.1.

## **LEGAL STANDARDS**

### I.    **Summary Judgment Standard**

Summary judgment is "an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Pursuant to Federal Rule of Civil

Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  The burden then shifts to the opposing party to "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (internal quotation marks omitted).  Rather, the opposing party must "adduce evidence which, when considered in light of that party's burden at trial, could be the basis for a jury finding in that party's favor."  *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring); *see also Conway v. A.I. Dupont Hosp. for Child.*, Civ. Action No. 04-4862, 2009 U.S. Dist. LEXIS 896, at *12 (E.D. Pa. Jan. 6, 2009) (a party "cannot avert summary judgment with speculation or by resting on the allegations in the pleadings, but rather must present competent evidence from which a jury could reasonably find in their favor").

In other words, "[t]he non-moving party may not merely deny the allegations in the moving party's pleadings; instead he must show where in the record there exists a genuine dispute over a material fact."  *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (3d Cir. 2007) (*citing Celotex*, 477 U.S. at 322-26).  In attempting to show a genuine dispute, "the non-movant may not rest on

speculation and conjecture in opposing a motion for summary judgment." *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 666 (3d Cir. 2016).

## II.      Standards Governing ERISA Imprudence Claims

ERISA's duty of prudence requires fiduciaries to act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C § 1104(a)(1)(B).  To prevail on an ERISA imprudence claim, Plaintiffs must show that the fiduciaries breached ERISA's duty of prudence, causing a loss to the plan.  *Sweda v. Univ. of Pa.*, 923 F.3d 320, 328 (3d Cir. 2019).  Prudence has two facets:  procedural prudence and objective prudence.  *See In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 434 (3d Cir. 1996) ("*Unisys I*"); *In re Unisys Sav. Plan Litig.*, 173 F.3d 145, 153-54 (3d Cir. 1999) ("*Unisys II*") (citation omitted).  Procedural prudence focuses on the appropriateness of the fiduciaries' methods and investigation leading up to the challenged decision, at the time it was made, without the benefit of hindsight. *Unisys II*, 173 F.3d 145 at 153; *Renfro v. Unisys Corp.*, 671 F.3d 314, 322 (3d Cir. 2011); ECF No. 25 at 5.  Objective prudence, on the other hand, provides that a fiduciary is "insulated from liability if a hypothetical prudent fiduciary would have made the same decision anyway." *Renfro*, 671 F.3d at 322.  Objective prudence recognizes that, regardless of any failure to investigate beforehand, fiduciaries should not be held liable for objectively prudent outcomes. *Id.*  Accordingly, there is no liability if either prudence test is satisfied—*i.e.*, a fiduciary engaged in a prudent process, regardless of result, or made objectively prudent decisions, regardless of process*. See Unisys II,* 173 F.3d at 153-54.

Moreover, "[b]ecause the content of the duty of prudence turns on the circumstances … prevailing at the time the fiduciary acts, §1104(a)(1)(B), the appropriate inquiry will necessarily

be context specific … and courts must give due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise."  *Hughes v. Northwestern Univ.*, 142 S. Ct. 737, 742 (2022); *McCaffree Fin. Corp. v. ADP, Inc.*, Civil Action No. 20-5492 (ES) (JRA), 2023 U.S. Dist. LEXIS 56362, at *41-42 (D.N.J. Mar. 31, 2023).

## ARGUMENT

## I.    Defendants Are Entitled to Summary Judgment on Plaintiffs' Investment Claims

Plaintiffs allege in their FAC that the IC retained imprudently more than a dozen needlessly high-cost investments.  SOF, ¶¶ 11(a) – (d), 14.  Plaintiffs now abandon those claims, focusing solely on the alleged underperformance of two Plan investments in hindsight:  the Artisan International Growth ("Artisan") fund and the Fort Washington Large Cap Core Fund ("Fort Washington") fund.[1]  SOF, ¶¶ 78, 107.  But even those claims must be dismissed because Plaintiffs' procedural imprudence theories defy ERISA and basic economics, and because the material facts adduced in discovery are undisputed and support dismissal.  Moreover, Plaintiffs' inability to prove objective imprudence and loss are each separate and independent bars to liability.

### A. Plaintiffs Abandoned Their Investment Fee and Share Class Claims

Plaintiffs originally asserted four theories of imprudence: (1) some funds charged higher fees than comparable investments; (2) some funds cost more than the Investment Company Institute ("ICI") median of a broad investment category; (3) some funds were in a needlessly high-cost share; and (4) the IC failed to investigate whether lower cost investment vehicles like separate accounts or collective trusts were available.  SOF, ¶¶ 11(a)-(d), 14.    Plaintiffs have since abandoned these theories and offer no evidence from which a reasonable factfinder could find in

---

[1] Notably, these funds' returns are not even mentioned in the FAC.  SOF, ¶¶ 14, 81 (original claim alleges a "return deficiency" for three other funds).

Plaintiffs' favor.[2]  *See, e.g., Luscko v. S. Container Corp.*, No. 06-3896 (WHW), 2009 U.S. Dist. LEXIS 119365, at *18, *26-27 (D.N.J. Dec. 23, 2009) (plaintiffs must point specifically to evidence in the record; "speculation is not sufficient to survive summary judgment absent any evidence to support it").

Plaintiffs' expert, Eric Dyson, does not mention by name any fund other than the Fort Washington and Artisan funds (discussed *infra*), calculate loss of any fund other than the Fort Washington and Artisan Funds, identify any prudent alternative options for the funds challenged in the FAC, analyze what collective trusts or separate accounts were suitable alternatives, analyze the ICI median fees relied on in the FAC, analyze investment fees for any specific funds, or analyze what the proper share class for any fund should have been, in his opinion.  SOF, ¶¶ 78, 103, 105-11-.  In fact, Dyson admitted in his deposition that he did not independently review the share classes alleged in the FAC and admitted that his boilerplate statement that some of the Plan's investments were in needlessly high-cost share classes is predicated on these factually inaccurate allegations.  SOF, ¶ 104.  Without such analysis, Plaintiffs cannot prevail at trial on these claims, so summary judgment must be granted.[3]

---

[2] And for good reason:  these theories are not supported by ERISA and were undercut by the facts revealed in discovery.  Critically, Defendants' expert, Dr. John Chalmers, opined that the investment management fees and share class selection were reasonable, and Dyson does not rebut that.  SOF, ¶ 111.

[3] Dyson admits total plan cost is not an issue in the case.  *See* Declaration of Stacey C.S. Cerrone ("Cerrone Decl."), Ex. A, Expert Report of Eric C. Dyson ("Dyson Rep."), ¶ 44.  To the extent his lengthy discussion of total plan cost is an attempt to show imprudence in monitoring investment fees and share class selection, it is inadequate.  *See id.* at ¶¶ 40-51.  Total plan cost is a cumulation of all the Plan's fees, including administrative fees, recordkeeping fees, and investment fees, including revenue share and does not provide the one-to-one analysis needed to state a claim.  *See Hughes*, 142 S. Ct. at 742 (ERISA's prudence standards require analysis of each investment on its own); *infra* Argument § I.B.1.b; *see also McCaffree Fin. Corp.,* 2023 U.S. Dist. LEXIS 56362, at *48-49 (broad comparisons of total plan cost do not raise an inference of imprudence).

**B. Plaintiffs' Challenge of the Artisan and Fort Washington Funds Fails**

Instead of challenging fees, Plaintiffs now pivot to challenging the alleged underperformance of the Fort Washington and Artisan Funds, neither of which are challenged based on performance in the FAC. That claim cannot survive summary judgment because Plaintiffs do not establish any flaws in the IC's actual investment monitoring process and their theories of liability run contrary to ERISA's standards and requirements.

### 1. Plaintiffs Are Unable to Show Procedural Imprudence

Plaintiffs claim that the IC breached ERISA's duty of prudence by retaining the Artisan and Fort Washington funds because the funds underperformed their benchmark index at certain points in the Class Period.[4] Without analyzing or mentioning a single fact about the IC's robust monitoring process for investments, Plaintiffs claim that, had the Plan's IPS contained more details, the IC would have removed the funds and reduced participant losses. SOF, ¶ 79.

Plaintiffs' claim is fundamentally flawed and disingenuous. They ignore settled law: ERISA does not require an IPS or impose strict liability based on the terms of an IPS, nor does ERISA impose liability based solely on benchmark performance. Plaintiffs also ignore the facts revealed in discovery – which undisputedly show that the IC considered the exact data points Plaintiffs claim were not contained in the IPS – and basic concepts of economics, all to maximize damages. ERISA does not entertain such claims.

### a. ERISA Is Concerned with the Actual Fiduciary Process, Not Formalities, and the IC's Process Is Undisputedly Prudent

ERISA does not mandate the use of an IPS, let alone proscribe any specific requirements, terms, or level of discretion. *See Falberg v. Goldman Sachs Grp., Inc.*, 2022 U.S. Dist. LEXIS

---

[4] SOF, ¶ 78. Notably, these are not the same funds challenged in the FAC. The FAC challenges three other funds for an alleged "return deficiency" compared to passive funds. SOF, ¶ 14. In their expert report, Plaintiffs pivot from those funds to the Artisan and Fort Washington funds.

167064, at *28 (S.D.N.Y. Sep. 14, 2022).   Nor does ERISA create strict liability for investment

losses based on including, or not including, specific language in an IPS.  *Id.* at *32-33 (granting

summary judgment where investment committee did not have an IPS and plaintiff was unable to

prove that having an IPS would have caused that committee to act differently); *Muri v. Nat'l Indem.

Co.*, No. 8:17-cv-178, 2019 U.S. Dist. LEXIS 101540, at *8-9 (D. Neb. June 18, 2019) (same);

*Cunningham v. Cornell Univ.*, No. 16-cv-6525 (PKC), 2019 U.S. Dist. LEXIS 167868, at *44-46

(S.D.N.Y. Sep. 27, 2019) (that funds did not always meet performance guidelines summarized in

an IPS does not support an imprudence claim).  To assume from the lack of a specific term in an

IPS that the IC must not have had a prudent process, like Plaintiffs do here, is too speculative to

survive summary judgment.[5]  *Falberg*, 2022 U.S. Dist. LEXIS 167064 at *33 (rejecting the same

argument urged here, which is that a detailed IPS would have caused the plan to remove certain

investments); *Muri*, 2019 U.S. Dist. LEXIS 101540 at *9.   That is especially true where the

undisputed facts show that a regimented process was followed, notwithstanding the IPS's terms.

*Falberg*, 2022 U.S. Dist. LEXIS 167064 at *33 (refusing to find an imprudent process where the

undisputed evidence showed a thorough monitoring process, similar to the process the IC followed

here); *Muri*, 2019 U.S. Dist. LEXIS 101540, at *9 (analyzing the actual monitoring process rather

than speculation that the written documents were lacking and declining to find imprudence); *Birse*

---

[5] It bears noting that the IPS is not actually flawed.  Dyson claims that the terms were not
sufficiently specific, but out of the other side of his mouth recognizes that rigid monitoring criteria
is not required and is often eschewed by Plan fiduciaries because it restricts the discretion needed
to manage the Plan's investments prudently.  Cerrone Decl., Ex. A, Dyson Rep., ¶ 57; Ex. C, Case
Rep., ¶ 68.  Indeed, Dyson testified that he was not actually opining that the IPS was drafted or
amended incorrectly and that his commentary was editorial in nature.  Cerrone Decl., Ex. M,
Deposition Transcript of Eric C. Dyson ("Dyson Tr.") at 92:2-93:3.

*v. Centurylink, Inc.*, No. 17-cv-02872-CMA-NYW, 2020 U.S. Dist. LEXIS 38149, at *22 (D. Colo. Mar. 5, 2020) (same)

Here, the "omissions" from the IPS that Plaintiffs identify – which are, that the IPS does not expressly require the IC to review and analyze modern portfolio theory statistics, does not state the funds' benchmarks, does not give a time period for which to review performance, and does not proscribe the asset classes to be included in the Plan's line up – are all data points in the Quarterly Investment Reviews ("QIR") that Fiducient provided and reviewed quarterly with the IC. SOF, ¶ 80. Specifically, and as relevant here, the QIR include:

- macroeconomic factors and fund-and manager-specific factors that impacted investment performance;

- Each investments benchmark and returns compared to those benchmarks over several different time periods;

- Modern portfolio theory measures such as the standard deviation, alpha, beta, and Sharpe ratio;

- Specific manager commentary for each investment, including a label of "maintain," "discuss," "watch," or "terminate" for each fund to indicate which investments required heightened review;

- A "style map" that plotted each fund's investment strategy—as defined by market capitalization and focus on growth versus value—and showed any "drift" in style or potential "holes" in the Plan's asset class offerings.

SOF, ¶¶ 66, 69. It is undisputed that the IC reviewed these reports with Fiducient each quarter. SOF, ¶¶ 65, 74. In addition, the IC conducted an annual "deep dive" into investments wherein Fiducient reviewed the Qualified Default Investment Alternative ("QDIA"), asset class selection, all Plan investments, the investment menu design, and trends and best practices regarding investments. SOF, ¶ 72.

Plaintiffs do not dispute that the IC engaged in this review process or point to any flaws in it. SOF, ¶ 74. They do not rebut Mr. Case's opinion that the monitoring process aligned with the

standard of care.  SOF, ¶ 75.  In opining that the IC's monitoring processes fell below the standard

of care, Dyson does not cite to or analyze any of the IC's meeting minutes or QIR to support his

opinions.  SOF, ¶ 76.  Nor does he cite a single word of the deposition testimony in which the IC

members that were deposed or Defendants' experts confirm this prudent process occurred.  SOF,

¶ 77.  Ignoring key facts does not create a material issue of fact sufficient to survive summary

judgment.  *Vaticano v. Twp. of Edison*, Civil Action No. 09-01751 (SDW)(MCA), 2010 U.S. Dist.

LEXIS 118157, at *20-21 (D.N.J. Nov. 5, 2010) (holding that an expert report that fails to address

material facts, even if accepted as true, is "not sufficient to create a genuine issue of material fact");

*Amato v. Mapei Corp.*, No. 3:03cv2130, 2005 U.S. Dist. LEXIS 32290, at *12 n.2 (M.D. Pa. Dec.

12, 2005) (illustrating plaintiff's failure to create a genuine issue of material fact when he did not

produce evidence to rebut the expert opinions on a material issue).

Because the undisputed material facts show a prudent process for monitoring the Plan's

investment menu, including the Artisan and Fort Washington funds, Plaintiffs' claims fail.

### b.  Benchmark Underperformance, In Hindsight, Does Not Support a Finding of Imprudence

In the end, the only evidence that Plaintiffs can offer to support their claims related to the

Artisan and Fort Washington funds is that the two investments underperformed their benchmark

indexes at some points in the Class Period.  SOF, ¶ 101.  But benchmark underperformance is

expected and, on its own, is not a basis for a finding of imprudence.  *Smith v. CommonSpirit

Health*, 37 F.4th 1160, 1166 (6th Cir. 2022) (after-the-fact performance gaps are not evidence of

imprudence); *Cunningham*, 2019 U.S. Dist. LEXIS 167868, at *34, 35-36; *Jenkins v. Yager*, 444

F.3d 916, 926 (7th Cir. 2006) (citing *DeBruyne v. Equitable Life Assurance Soc'y*, 920 F.2d 457,

465 (7th Cir. 1990) ("[I]nvestment losses are not proof that an investor violated his duty of care.").

Indeed, Plaintiffs' singular focus on performance runs contrary to fiduciary best practices and

economic principles.  *Cunningham*, 2019 U.S. Dist. LEXIS 167868, at *36-37 (noting that prudent fiduciaries consider data and factors other than performance that were not considered by plaintiffs' expert); *see also* Cerrone Decl., Ex. A, Dyson Rep. at ¶ 35; Ex. E, Expert Report of Dr. John Chalmers ("Chalmers Rep."), ¶¶ 13(e), 75-86.

Moreover, Plaintiffs' performance challenges are based purely in hindsight, using returns not available to the IC at the time they made the challenged decisions.  Such a hindsight-based approach is fundamentally flawed because courts must look at the process rather than the results. *Unisys I*, 74 F.3d 420 at 434.  "[H]indsight indeed is 20/20, so the focus must be on a fiduciary's conduct in arriving at [a] . . . decision."  *Unisys I*, 74 F.3d 420 at 434; *Sweda v. Univ. of Pa*., 923 F.3d 320, 329 (3d Cir. 2019); *see also Hughes*, 142 S. Ct. at 742 (breach of fiduciary duty analysis is "context-specific"); *see also* Cerrone Decl., Ex. E, Chalmers Rep., ¶¶ 77, 82.  Plaintiffs challenge the Artisan and Fort Washington funds based on data Dyson compiled in 2022, when he wrote his report, that these two funds' returns were lower than their respective benchmark indices – which is not data that the IC members could have considered at the time of the decision to retain the funds.  Cerrone Decl., Ex. A, Dyson Rep. ¶ 59 & Appendix C; Ex. E, Chalmers Rep. ¶ 82.  That these funds were chosen purely in hindsight is exposed by the fact that neither fund is challenged in the FAC based on their performance.

In sum, fiduciary liability under ERISA does not stand purely based on an argument that, looking back, with data from the present day, two funds could have been removed because at times they failed to outperform their benchmark index.

### 2.    Plaintiffs Are Unable to Show Objective Imprudence

Plaintiffs' challenge of the Artisan and Fort Washington funds fails for the separate and independent reason that it is undisputed that the funds are objectively prudent investments.  The

Artisan and Fort Washington funds are objectively prudent if they fall into a range of reasonableness such that a hypothetical prudent fiduciary could have made the same decision to retain them, regardless of the process for reaching the decision. *Supra*, Legal Standards II; *see also Unisys II*, 173 F.3d at 167 (affirming a finding that guaranteed investment contracts ("GICs") purchased by a pension plan were objectively prudent based on evidence that other pension plans bought the same GICs, the plan's advisor approved the GICs at the relevant time, and other courts had endorsed their purchase in other cases); *see also Pizarro v. Home Depot, Inc.*, 634 F. Supp. 3d 1260, at 1287-88, 1297-98, 1302-03, 1304 (analyzing loss causation and dismissing claims based on cherry-picked performance data); *Ortiz v. Am. Airlines, Inc.*, No. 4:16-cv-151-A, 2020 U.S. Dist. LEXIS 139411, at *38-39 (N.D. Tex. Aug. 5, 2020) (criticizing that plaintiffs "seem to think" that all they must prove is an imprudent process), *rev'd and vacated on other grounds* by 5 F.4th 622 (5th Cir. 2021); *Cunningham*, 2019 U.S. Dist. LEXIS 167868, at *36 (same).[6]

Defendants offer undisputed evidence that the funds were economically reasonable investments through Dr. Chalmers' expert report. SOF, ¶ 99. In addition, at the time the funds were offered in the Plan, it is undisputed that Fiducient approved of the inclusion of the funds during the Class Period, up until the decision to evaluate other options and terminate the funds. SOF, ¶¶ 88, 98. Dyson does not dispute that the funds are reasonable and conceded that he is not opining on the objective imprudence of the funds at all. SOF, ¶ 100. Thus, Plaintiffs are unable to prove objective imprudence at trial, and summary judgment should be granted.

---

[6] Some courts analyze objective prudence as part of the loss element of an imprudence claim, but the analysis is materially similar and applies here.

### 3.      Plaintiffs Are Unable to Show a Loss

Plaintiffs are also unable to prove a loss that is causally connected to the alleged breach, which is an essential element of their claim.  *Supra*, Legal Standards § II.

The Third Circuit "adopt[s] the alternative investment approach for the measurement of damages in cases for fiduciary breaches under ERISA."  *Moore v. Comcast Corp.*, 268 F.R.D. 530, 534 (E.D. Pa. 2010).  Under this approach, loss is determined by measuring "the amount that affected accounts would have earned if prudently invested."  *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007); *see also Trs. of the Local 464A UFCW Pension Fund v. Wachovia Bank, N.A.*, No. 09-668 (WJM), 2009 U.S. Dist. LEXIS 109567, at *14 (D.N.J. Nov. 24, 2009) (explaining "where a fiduciary is found to have breached his duty to invest prudently, courts have assessed damages based on the difference between the actual performance of the investment and the value of a prudent investment."); *accord Evans v. Akers*, 534 F.3d 65, 74 (1st Cir. 2008) (holding that losses to a plan from a breach of the duty of prudence may be ascertained, with the help of expert analysis, by comparing the performance of imprudent investments with the performance of a prudently invested portfolio).

Thus, to measure and establish loss, Plaintiffs must identify prudent alternative investments as a benchmark.  A meaningful benchmark must be an actual investment alternative available to the plan fiduciary during the time in question.  *See Young Cho v. Prudential Ins. Co. of Am.*, Civil Action No. 19-19886 (JMV) (SCM), 2021 U.S. Dist. LEXIS 185397, at * 25-26 (D.N.J. Sep. 27, 2021) (*citing Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 823 (8th Cir. 2018)); *see also e.g.*, *Matney v. Barrick Gold of N. Am.*, No. 22-4045, 2023 U.S. App. LEXIS 23627, *19-21 (10th Cir. Sep. 6, 2023); *Albert v. Oshkosh Corp.*, 47 F.4th 570, 582 (7th Cir. 2022), *Smith,* 37 F.4th at 1662;

14

*cf. Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 428 (2014) (ERISA's fiduciary standards require plaintiffs to show a prudent alternative course of action).

Plaintiffs do not offer any meaningful benchmarks needed to calculate loss. Dyson merely compared the performance of the Artisan and Fort Washington funds to the imaginary performance of non-investible indices not subject to any real-world conditions like fees and trading costs, which is meaningless from an economic perspective. SOF, ¶ 101; *see also* Cerrone Decl., Ex. E, Chalmers Rep., ¶ 86. Even Dyson recognizes the lapse in his analysis due to not providing any meaningful benchmarks for comparison.[7] Summary judgment is thus required.

## II. Defendants Are Entitled to Summary Judgment on Plaintiffs' Recordkeeping Claim

Plaintiffs also claim that the IC acted imprudently by failing to monitor and control the Plan's recordkeeping fees. SOF, ¶ 11(f). The Court sustained the claim at the pleading stage, finding that it had to take as true Plaintiffs' allegations that: (a) the IC took no action to reduce fees; (b) the fees increased during the Class Period; (c) the DOL says that fees should decrease as plan participants increase; and (d) there was a downward trend in recordkeeping fees. SOF, ¶ 10. Discovery has undisputedly discredited those allegations, and Plaintiffs' efforts to re-invent the undisputed facts through expert testimony cannot save their claim.

### A. Plaintiffs Cannot Prove Procedural Imprudence

There is no issue of material fact on the issue of procedural prudence. Notwithstanding the FAC's speculative allegations, it is undisputed that: (a) the IC monitored the Plan's recordkeeping fees by benchmarking them against peer plans at least annually during the Class Period (SOF, ¶

---

[7] Dyson agrees that he does not provide an appropriate comparator for loss and damages but states that his analysis could be refashioned into a meaningful evaluation if the funds' performance was compared to "a passive index fund which mirrors the benchmark." *See* Cerrone Decl., Ex. M, Dyson Tr., 76:24-77:6. But he did not conduct that analysis. *Id.*

122); (b) the IC also conducted a request for information ("RFI") for recordkeepers and other off-cycle pricing analyses and cost comparisons (SOF, ¶ 123, 125, 137-138, 140, 142); (c) Fiducient never reported that the Plan's fees were unreasonable (SOF, ¶ 144); (d) the Plan's recordkeeping fees decreased throughout the Class Period (SOF, ¶ 115).  Plaintiffs' claim that the IC was asleep at the wheel is therefore undercut entirely by discovery.  *Shiqiong Huang v. TriNet Hr III Inc.*, No. 8:20-cv-2293-VMC-TGW, 2023 U.S. Dist. LEXIS 72938, at *33 (M.D Fla. Apr. 25, 2023).

Indeed, Plaintiffs cannot offer any proof that the IC's conduct in monitoring the fees fell below the applicable standard of care.  Dyson does not opine on, or even analyze, the IC's process, nor does he rebut Mr. Gissiner's opinion that the IC's actions aligned with the standard of care.  SOF, ¶ 148.   Plaintiffs' inability to prove procedural imprudence requires summary judgment to be granted in Defendants' favor.  *See, e.g., Matney*, 2023 U.S. App. LEXIS 23627, *38 (declining to even infer an imprudent process for monitoring Fidelity's recordkeeping fees where undisputed evidence showed that the fees decreased over the class period).

**B. Plaintiffs Cannot Prove Objective Imprudence**

There is also no issue of material fact on the issue of objective prudence.  It is undisputed that the recordkeeping fees alleged in the FAC are incorrect[8] and that the fees decreased over the Class Period as the Plan grew and as the Plan's consultant benchmarked and negotiated the fees downward.  SOF, ¶¶ 115, 118, 122.    Again, Plaintiffs' allegations are undercut entirely by discovery.

And, again, Plaintiffs can offer no proof that the Plan's fees were objectively unreasonable such that a hypothetical, prudent fiduciary in the same circumstances would not have negotiated the same fee.  *Supra* Legal Standards § II.  Plaintiffs do not offer any independent benchmarking

---

[8] SOF, ¶ 116.

purporting to show what the reasonable range of fees for the Plan is compared to similar plans, nor do they rebut Mr. Gissiner's benchmarking analysis showing that the fees were reasonable. SOF, ¶ 147. Plaintiffs' lack of proof on this element is yet another, independent reason that the Court must grant summary judgment in Defendants' favor. *Shiqiong Huang*, 2023 U.S. Dist. LEXIS 72938, at *33 (granting summary judgment where "the only evidence regarding the reasonableness of the recordkeeping fees comes from Defendants' expert" and he opined that the fees were reasonable); *see infra* Argument § II.D (compiling cases requiring comparisons to other, similar plans.).

### C. Fiduciaries Are Not Required to Reflexively Select the Lowest Fee

To the extent that Plaintiffs seek to use Dyson's testimony to re-invent the facts of the case and fabricate a breach, the Court must not credit those efforts. Dyson states that, because Empower quoted a $23 per participant bid for recordkeeping services during the 2021 RFI, the IC was imprudent for not abandoning the Plan line up to obtain that fee and for not obtaining that fee as far back as the start of the Class Period. SOF, ¶ 134.

But ERISA does not require Plan fiduciaries to select the lowest fee without considering any other factors, thus failing to do so, on its own, is not sufficient evidence of imprudence. *Albert*, 47 F.4th 570 at 579 (re-emphasizing fiduciaries are not required to select the lowest fee possible without regard to any factors other than cost) *citing Hecker v. Deere & Co.*, 556 F.3d 575, 586 (7th Cir. 2009); *Cunningham*, 2019 U.S. Dist. LEXIS 167868, at *17; *see also McCaffree Fin. Corp.*, 2023 U.S. Dist. LEXIS 56362, at *43 ("A high fee alone does not mandate a conclusion that recordkeeping fees are excessive; rather, fees must be evaluated 'relative to the services rendered.'") (citations omitted). That is especially true when chasing the lowest fee would require the Plan to make significant changes. *Nunez v. B. Braun Med. Inc.*, No. 20-4195, 2023 U.S. Dist.

LEXIS 145024, *30-32 (E.D. Pa. Aug. 18, 2023) (finding it prudent to select a recordkeeper that charged a higher fee to retain the Plan's open architecture structure).

It is undisputed that the $23 fee quoted by Empower was only available if the Plan made significant changes to the Plan. The chart that Dyson relies on summarizes multiple tiers of pricing (from highest to lowest): Tier 1 was for open architecture pricing (meaning, the Plan was not required to use the recordkeeper's proprietary products and services), Tier 2 pricing required a change to the Plan's QDIA to use the new recordkeepers' proprietary managed account services, Tier 3 pricing required a change to the Plan's stable value fund to use the new recordkeeper's proprietary stable value fund, and Tier 4 pricing required the Plan to make both changes. SOF, ¶ 127. Tier 1 is the correct tier to determine what fee the Plan could obtain while retaining its open architecture structure. SOF, ¶ 127. But Dyson's $23 fee is Empower's Tier 4 proposal, the lowest fee in the RFI, meaning the Plan would have had to change recordkeepers and the Plan's QDIA and stable value fund to unlock that pricing, even though Plaintiffs are not alleging any issues with the quality of Prudential's services or that the Plan's QDIA or stable value fund were imprudent and should be replaced. SOF, ¶¶ 53-54, 107, 127-128. In other words, Dyson's conclusion that, with a prudent process, this Plan could have negotiated a $23 per participant fee while retaining GoalMaker and the Plan's stable value fund is wrong.[9]

### D. Plaintiffs Are Unable to Show a Loss

The final, independent basis to grant summary judgment in Defendants' favor is that Plaintiffs are unable to show a loss. To show loss, Plaintiffs must compare the fees of similar

---

[9] What's even more incredulous is the claim that the IC could have negotiated this fee, quoted in the 2021 RFI, prior to 2021. The crux of Plaintiffs' claim is that fees have decreased in general during the Class Period, so it is unclear how the $23 fee was attainable earlier. Indeed, the Plan's benchmarking shows the opposite. Not a single plan in Mr. Gissiner's recordkeeping benchmark analysis paid a $23 per person recordkeeping fee at *any* point in the Class Period. SOF, ¶ 146.

plans receiving similar services. *Shiqiong Huang,* 2023 U.S. Dist. LEXIS 72938 at \*24, 33-34 (requiring evidence of the excessiveness of the plan's recordkeeping fees as compared to alternative plans receiving similar services); *Cunningham,* 2019 U.S. Dist. LEXIS 167868, at \*28-32 (finding that vague references to the IC's prior benchmarking studies, without evidence of why those studies are appropriate comparators, does not establish loss); *see also Matney,* 2023 U.S. App. LEXIS 23627 at \*21; *Smith,* 37 F.4th at 1169 (fee comparators must be considered "relative to the services rendered"); *Albert,* 47 F.4th at 580 (same); *Matousek v. MidAmerican Energy Co.*, 52 F.4th 274, 279 (8th Cir. 2022) (same); *Krutchen v. Ricoh USA, Inc.*, No. 22-678, 2023 U.S. Dist. LEXIS 68942, at \*5 (E.D. Pa. Apr. 20, 2023) (holding that it "defies common sense" to compare recordkeeping fees across plans without considering the services provided); *McCaffree Fin. Corp*, 2023 U.S. Dist. LEXIS 56362, at \*43.

Plaintiffs use the $23 Empower price quote as their benchmark for loss, but as discussed above (*supra* Argument § II.C), that quote is for an entirely different set of services and thus does not meet this standard. Dyson admitted that he did not consider in his analysis the services that Prudential was providing compared to what was included in the $23 bid, or that the Plan would need to change the Plan's QDIA (despite its historically favorable returns), stable value fund, and Plan services, notwithstanding the fact that he agrees that such factors must be considered when evaluating fees. SOF, ¶¶ 135, 150.[10] Nor did he account for any of these changes from a participant-experience perspective, or a cost-perspective, and Plaintiffs adduced no other evidence on those points. SOF, ¶ 135. Plaintiffs do not dispute Mr. Gissiner's opinion that from a cost-standpoint alone, making these changes to obtain a lower recordkeeping fee would have caused an

---

[10] Dyson freely admitted that his opinion is based exclusively on the single (lowest) number from the Blind RFI, that he knew nothing about any other circumstances of that quote, and he conducted no independent analysis about the same. SOF, ¶ 150.

increase to the plan participant fees overall because there was a fee associated for the Morningstar Advisory service.  SOF, ¶ 136.

In sum, given the undisputed material facts adduced in discovery, there is nothing left to Plaintiffs' claim, and no path for Plaintiffs to prove a breach of the standard of care, objective imprudence, or loss.  Summary judgment should be granted in Defendants' favor.

## III.  Monitoring Claim

Plaintiffs maintain that Evonik and its President failed to monitor the Committee to ensure compliance with fiduciary duties.  SOF, ¶ 11.  The claim is easily rejected.  Plaintiffs have adduced no evidence regarding how Defendants' process of monitoring its delegates was lacking, and the undisputed evidence shows that the President was a member of the Committee, thus constantly monitoring it, throughout the Class Period.  SOF, ¶ 35.

Notably, even if Plaintiffs could show monitoring deficiencies, their claims fail.  As discussed, Plaintiffs cannot prove a breach of the duty of prudence, and the monitoring claim is derivative of their imprudence claims.  Thus, if summary judgment is granted on the imprudence claim, this claim fails too.  *Edgar v. Avaya, Inc*., 2006 U.S. Dist. LEXIS 23151 at *34-35 *aff'd* 503 F.3d 340, 350 n.15 (3d Cir. 2007) *abrogated on other grounds by Dudenhoeffer*, 573 U.S. 409.

## CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment should be granted in its entirety.

Dated:  September 28, 2023                    **JACKSON LEWIS P.C.**

                                               *s/ Carla D. Macaluso*
                                              Carla D. Macaluso
                                              200 Connell Drive, Suite 2000
                                              Berkeley Heights, NJ 07922
                                              Telephone: (908) 795-5200
                                              Facsimile: (908) 464-2614
                                              Carla.Macaluso@jacksonlewis.com

                                              Stacey C.S. Cerrone*
                                              Lindsey H. Chopin*
                                              René E. Thorne*
                                              Howard Shapiro*
                                              601 Poydras Street, Suite 1400
                                              New Orleans, LA 70130
                                              Telephone: (504) 208-1755
                                              Facsimile: (504) 208-1759
                                              Stacey.Cerrone@jacksonlewis.com
                                              Lindsey.Chopin@jacksonlewis.com
                                              Rene.Thorne@jacksonlewis.com
                                              Howard.Shapiro@jacksonlewis.com

                                              ***Attorneys for Defendants***

                                                **\*Admitted Pro Hac Vice.**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 28, 2023, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*s/ Carla D. Macaluso*
Carla D. Macaluso
200 Connell Drive, Suite 2000
Berkeley Heights, NJ 07922
Telephone: (908) 795-5200
Facsimile: (908) 464-2614
Carla.Macaluso@jacksonlewis.com
